# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WILLIAM CHILDS SHIRAH**                                    CIVIL ACTION

**VERSUS**                                                            No.    26-173

**LELAND FALCON, ET AL.**                               SECTION I

## ORDER AND REASONS

Before the Court is *pro se* plaintiff William Childs Shirah's ("Shirah") second motion[1] for a temporary restraining order ("TRO") and motion[2] to expedite consideration of plaintiff's motion for a TRO. For the following reasons, the Court **GRANTS** expedited consideration of plaintiff's motion for a TRO and **DISMISSES** his motion for a TRO.

## I.    BACKGROUND

On January 7, 2026, Shirah filed this lawsuit alleging a cause of action pursuant to 42 U.S.C. § 1983 against defendants Adam Mayon ("Mayon"), a deputy with the Assumption Parish Sheriff's Office ("APSO"), in his personal and official capacity, and defendant Leland Falcon ("Falcon"), Assumption Parish Sheriff, in his official capacity, for violations of the First, Fourth, and Fourteenth Amendments to

---

[1] R. Doc. No. 12.

[2] R. Doc. No. 13. The only pending motions before the Court are Shirah's motion for a TRO and motion for expedited consideration. To the extent his motion for expedited consideration asks the Court to grant expedited consideration of "forthcoming" motions or other requests not currently before the Court, such a ruling is premature as the Court cannot consider motions it has not received. Accordingly, the Court will construe Shirah's "motion to expedite consideration of pending and forthcoming motions" as a motion to expedite consideration of plaintiff's motion for a TRO.

the U.S. Constitution.[3] Shirah primarily alleges that Mayon has "engaged in a continuous campaign of harassment against [him] under color of law,"[4] including "disseminat[ing] false allegations claiming [Shirah] was a 'needle junkie,' effectively destroying [Shirah's] personal and professional relationships," and "fabricat[ing] a [misdemeanor] theft charge" that resulted in the state "jailing" Shirah.[5]

When this case was transferred to this Court from the Middle District of Louisiana, Shirah had already filed his first motion for a TRO.[6] His first motion claimed, among other things, that Mayon's actions during and since his arrest have caused him to fear for his safety.[7] Shirah also stated that he is "the primary caregiver" for Donna Dupree ("Dupree") and that Dupree "suffers severe emotional distress and a direct threat to her medical stability due to . . . Mayon's presence."[8] Additionally,

---

[3] R. Doc. No. 1, at 1–2. In addition to equitable relief, Shirah's complaint also requests compensatory and punitive damages totaling $1,050,000. *Id*. at 2.

[4] *Id*. at 1.

[5] *Id*. at 1–2. Since filing his complaint, Shirah has informed the Court that the charges pending against him in the State of Louisiana, filed on November 10, 2025, are for one count of "misdemeanor theft," not "felony theft." R. Doc. No. 12-2, at 1; *see also* R. Doc. No. 12-7 (charging one count of theft less than $1000 in violation of La. R.S. 14:67.B(4)).

[6] R. Doc. Nos. 1, 2. Shirah claims that the "Middle District of Louisiana [endorsed and] did not dismiss [his case] under *Younger* abstention, finding that [his] constitutional claims warranted federal review despite pending state proceedings. R. Doc. No. 12, at 6. That is incorrect. In the order transferring the case, the court did not address the merits of Shirah's claims and did not discuss any issues concerning federal abstention from state criminal proceedings or *Younger v. Harris*, 401 U.S. 37 (1971). *See generally* R. Doc. No. 3 (finding that venue is proper in the Eastern District of Louisiana and transferring the case). Similarly, this Court has not yet addressed, and reserves the right to address, whether *Younger* applies to plaintiff's claims for relief.

[7] R. Doc. No. 2, at 1; *see also* R. Doc. Nos. 1-5–1-8.

[8] R. Doc. No. 2, at 1.

Shirah claimed that he attempted to obtain a protective order through the state court, but he was unsuccessful through no fault of his own.[9] According to Shirah, a TRO requiring Mayon to remain "at least 1,000 feet away from [his] residence on Mitchy St." was warranted.[10]

On January 29, 2026, the Court dismissed Shirah's first TRO motion, finding that "Shirah has failed to satisfy the notice requirement" for an *ex parte* TRO, that "[e]ven if the Court were to consider [his] allegations . . . Shirah makes no effort to establish that irreparable harm will result before defendants are given an opportunity to respond," and that Shirah did not evidence "any effort to notify defendant of the motion for TRO, nor has he explained why he should not be required to provide notice to defendant of the same."[11]

Shortly thereafter, Shirah filed a motion requesting an order directing the United States Marshal Service ("USMS") to effectuate service of his complaint and summons on the defendants.[12] The United States Magistrate Judge denied Shirah's motion on February 27, 2026, noting that he overlooked other readily available avenues of serving the defendants.[13]

Shirah subsequently filed the present motion for a TRO and motion to expedite consideration on March 4, 2026.[14] He provided two affidavits that he executed in

---

[9] *Id.*
[10] *Id.*
[11] R. Doc. No. 5, at 5–6.
[12] R. Doc. No. 10.
[13] R. Doc. No. 11, at 2.
[14] R. Doc. Nos. 12, 13.

support of his motion.[15] The current motion and supporting affidavits largely reassert the allegations from his complaint and first motion for a TRO, including Shirah's claims that the state criminal proceedings against him are unjust and retaliatory, that Mayon's continued "monitor[ing] of [his] movements" causes him and Dupree to fear for their safety, and that unexplained delays and "[i]rregular" letters from court personnel have resulted in his failure to obtain a protective order through state court means.[16]

Shirah also provides four new allegations that were not before the Court when it issued its January 29, 2026 order and reasons. First, Shirah claims that during a February 24, 2026 criminal hearing on his state misdemeanor charges, Mayon became enraged because Shirah announced the existence of the present civil lawsuit in open court.[17] Shirah alleges that because Mayon is now aware of this lawsuit, he and Dupree fear for their physical safety.[18] Second, Shirah states that on February 26, 2026, he saw Mayon driving on a street approximately "700 feet" from Shirah's residence.[19] Shirah states that this incident made him feel "effectively unable to leave

---

[15] R. Doc. Nos. 12-2, 12-3.

[16] *See* R. Doc. No. 12-2, at 4. Shirah cites as evidence, and claims to have filed, the following documents that are not currently part of the record in this case: "Exhibit A: January 14, 2026 letter from Sidney Breaux"; "Exhibit B: January 22, 2026 letter from Sidney Breaux"; "Exhibit C: DAPP letter regarding Wildlife & Fisheries citations"; "Exhibit D: Text message to Donna Dupre[e]"; "Exhibit E: defective/blank bodycam dvd"; "Exhibit F; open court appearance notices in 'trial trap', and certified mail receipt for Marshal motion." *See id.* at 5.

[17] *Id.* at 2–3.

[18] *Id.* at 3.

[19] *Id.* at 3–4.

[his] home."[20] Shirah points to the alleged events in February 2026 as evidence that a TRO is now justified because "[t]he window of greatest danger is now—before [defendants have] been formally served."[21]

Next, the affidavit alleges that unidentified "state court personnel" informed Shirah that "the state intends to revive old Louisiana Wildlife and Fisheries citations against [him]," and Shirah believes this exhibits a "pattern of reviving old charges . . . [and a] broader pattern of bad-faith prosecution and retaliation."[22] Shirah does not argue that the state has actually reopened any cases against him, nor does he claim that he has personal knowledge that the state will ever "reopen" any cases against him.[23]

Finally, Shirah suggests that the state court has "attempt[ed] to create confusion about where and how [he] should" obtain a protective order.[24] Shirah explains that the state court directed him to file his motion for a protective order as a civil docket matter, even though he had filed an existing motion for a protective order in his criminal misdemeanor case.[25] According to Shirah, the state court notified him of the mistake three times—twice via letters dated January 14 and 22, 2026, and on February 24, 2026, when Shirah appeared for a hearing on his criminal charges.[26]

---

[20] *Id.* at 4.
[21] R. Doc. No. 12, at 4, 8.
[22] R. Doc. No. 12-2, at 2.
[23] *Id.*
[24] *Id.* at 1.
[25] *Id.*
[26] *Id.*

5

Shirah's present motion asks in part for various forms of equitable relief preventing Mayon from: "[h]arassing, threatening, intimidating, [retaliating against,] or making any contact with Shirah or Dupree;" "[a]pproaching within 500 feet" of Shirah, Dupree, and their respective residences; "[i]nitiating any stops, detentions, or arrests of Plaintiff except where supported by probable [cause and] based on conduct wholly independent of the parties' history and this pending litigation;" and "[d]estroying, concealing, or altering any evidence relevant to this-case."[27]

The record lacks any evidence that either the complaint or the motion for a TRO was served on either defendant.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 65(b)(1)(A) and (B) explains that "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:"

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

"The Rule 65(b)(1) criteria are strict requirements, not mere technicalities, that establish minimum due process." *Cajun Servs. Unlimited, LLC v. Benton Energy*

---

[27] R. Doc. No. 12, at 8–9.

*Serv. Co.*, No. 17-491, 2020 WL 10486334, at *3 (E.D. La. Oct. 16, 2020) (Ashe, J.) (internal modifications omitted).

With respect to notice, "[t]he normal circumstances for which a district court is justified in proceeding ex parte is where notice to the adverse party is impossible, or in cases where the adverse party is unknown or is unable to be found." *Evans v. Select Jan. Six Comm.*, No. 22-682, 2022 WL 17724137, at *4 (E.D. Tex. Dec. 15, 2022). The moving party must make "a clear showing that immediate and irreparable injury will result *before* the adverse party can be heard" for the court to issue a TRO *ex parte. CompuCom Sys., Inc. v. WJ Glob., LLC*, No. 14-3625, 2014 WL 5032747, at *2 (N.D. Tex. Oct. 8, 2014). Mere speculation of harm is "not enough to clear the exacting threshold of immediate and irreparable injury to justify the issuance of an *ex parte* TRO." *Lindsey v. Texas*, No. 24-1212, 2025 WL 2677885, at *3 (N.D. Tex. Aug. 29, 2025), *report and recommendation adopted*, No. 24-1212, 2025 WL 2677389 (N.D. Tex. Sept. 18, 2025).

## III.    ANALYSIS

Once again,[28] although Shirah filed two affidavits[29] in support of his second motion for a TRO, he has failed to clearly articulate specific facts beyond mere speculation that clearly establish an immediate risk of irreparable harm, and he has not justified his failure to notify the defendants of the present motion or serve them with the complaint in this lawsuit.

---

[28] *See generally* R. Doc. No. 5 (denying Shirah's motion for an *ex parte* TRO for failing to satisfy the exception to the notice requirement for injunctive relief).
[29] *See* R. Doc. Nos. 12-2, 12-3.

As the Court has previously stated, "Shirah makes no effort to establish that irreparable harm will result *before* defendants are given an opportunity to respond."[30] *See Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, No. 17-491, 2020 WL 10486334, at *5 (E.D. La. Oct. 16, 2020) ("Plaintiffs [must show] that immediate and irreparable injury 'will result' in the short period needed for [the defendant] to respond."); *see also Stone Metals Am.,* LLC, 2020 WL 570906, at *2 ("[The] declaration is missing the key requirement: 'specific facts . . . [which] clearly show that immediate and irreparable injury, loss, or damage will result to the movant *before the adverse party can be heard in opposition*.'" (emphasis in original)). Shirah's claims rely on mere speculation that Mayon will at some time in the future either physically harm Shirah or violate his constitutional rights.

Shirah openly admits that he has not made any effort to notify the defendants of his motion for a TRO, serve them with the complaint, nor issue a waiver of service.[31] His justification for this failure—that service is forthcoming due to an expectation that a motion for service by the USMS would be granted—is unfounded.[32] The motion requesting the USMS to effectuate service was denied on February 27, 2026, before the present motion was filed on March 4, 2026.[33] Shirah has therefore not provided any explanation as to why he should not be required to provide notice to the defendants of his present request for injunctive relief. *See Silver v. Off. of Att'y Gen.,*

---

[30] R. Doc. No. 5, at 5–6.
[31] R. Doc. No. 12, at 8.
[32] R. Doc. No. 8.
[33] R. Doc. Nos. 11, 12.

8

No. 24-1298, 2025 WL 890734, at *1 (W.D. Tex. Mar. 10, 2025), *appeal dismissed*, No. 25-50350, 2025 WL 3079092 (5th Cir. June 4, 2025); *see also Street v. Christ*, No. 25-01882, 2025 WL 3623319, at *1 (W.D. La. Dec. 12, 2025) (denying the *pro se* plaintiff's *ex parte* TRO motion to enjoin the defendant deputy because the plaintiff "ha[d] not served the Defendants" and failed to satisfy either requirement of Rule 65(b)(1)).

Shirah's failure to satisfy Rule 65(b)(1)(B)'s requirements is itself sufficient for the Court to deny the motion. *See Davis v. Angelina Coll. Bd. of Trs.*, No. 17-179, 2017 WL 11472539, at *2 (E.D. Tex. Oct. 19, 2017), *report and recommendation adopted*, 17-179, 2017 WL 11472534 (E.D. Tex. Nov. 13, 2017) ("The undersigned does not address whether the Plaintiff complied with Rule 65(b)(1)(A) at this time because the failure to comply with Rule 65(b)(1)(B) renders the [*pro se*] Plaintiff's motion for a temporary restraining order legally insufficient."); *see also Goodson v. City of Dallas*, No. 25-816, 2025 WL 1373737, at *2 (N.D. Tex. Apr. 7, 2025), *report and recommendation adopted*, No. 25-816, 2025 WL 1333657 (N.D. Tex. May 7, 2025) ("[F]ailure to satisfy Rule 65(b)(1)'s requirements, standing alone, is a sufficient basis to deny his request for a TRO.").[34]

---

[34] Rule 65(b)(1)(B) requires "the movant's attorney [to certify] in writing any efforts made to give notice and the reasons why it should not be required," and courts in the Fifth Circuit hold *pro se* movants to the same requirements. *See, e.g., Martono-Chai v. Williams*, No. 25-578, 2025 WL 974251, at *1 (E.D. La. Apr. 1, 2025) (Barbier, J.) (recognizing that even if filing *pro se* "[t]he movant must further 'certif[y] in writing any efforts made to give notice and the reasons why it should not be required'" (quoting Fed. R. Civ. P. 65(b)(1)(B)) (other citations omitted)); *Davis*, No. 17-179, 2017 WL 11472539, at *1 & n.1 (finding although "the Plaintiff is proceeding *pro se*, he has failed to comply with Rule 65 . . . [by failing] to certify in writing any efforts made to provide notice to the Defendants . . . [and failing] to provide sufficient reasons why notice should not be required"); *Willrich v. United States*, No. 13-2670, 2013 WL

## IV.      IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that plaintiff's motion[35] to expedite consideration of the motion for a temporary restraining order is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's *ex parte* motion[36] for a temporary restraining order is **DISMISSED.**

New Orleans, Louisiana, March 12, 2026.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

3949026, at *1 (N.D. Tex. Aug. 1, 2013) (explaining that Rule 65(b)(1)(B) requires "the movant's attorney [or, if *pro se*, the movant] [to certify] in writing any efforts made to give notice and the reasons why notice should not be required").

[35] R. Doc. No. 13.

[36] R. Doc. No. 12.